IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 10-489-2 |
| | : | |
| AARON SMITH | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                 **July 31, 2014**

In May 2013, a jury convicted Defendant Aaron Smith of federal offenses arising out of his involvement in an October 2008 gunpoint robbery of the Fox & Hound Restaurant in Philadelphia.  The jury convicted Smith of three counts:  conspiracy to commit robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951 (Count One); robbery which interferes with interstate commerce and aiding and abetting, in violation of 18 U.S.C. §§ 1951 and 2 (Count Two); and using and carrying, and aiding and abetting the use and carrying of, a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c) and 2 (Count Three).  Smith's coconspirators, Omar Kareem Hopkins and Kareem Watson, were also convicted for their roles in the robbery.  Hopkins pleaded guilty to various federal offenses in July 2009, and Watson was convicted following a jury trial in November 2011.[1]

On March 16, 2014, Smith filed a Second Motion for Judgment of Acquittal or New Trial Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure, seeking a judgment of acquittal or a new trial on Count Three, the § 924(c) count, on the basis that the Court's instruction on aiding and abetting liability was inadequate under the Supreme Court's March 5, 2014, decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

---

[1] Smith was originally tried along with Watson in November 2011, and both he and Watson were convicted.  Smith successfully appealed his conviction, necessitating a retrial on the same charges in May 2013.

In *Rosemond*, the Supreme Court considered "what it takes to aid and abet a § 924(c) offense," addressing how the two general requirements for aiding and abetting liability—(1) an affirmative act in furtherance of the underlying crime and (2) intent to facilitate commission of the crime—apply with respect to a § 924(c) offense, a "combination crime" for which the Government must show both "the use or carriage of a gun" and "the commission of a predicate (violent or drug trafficking) offense." *Id.* at 1245, 1248.  With respect to the affirmative act requirement, the Court rejected the defendant's argument "that the requisite act . . . must be directed at the use of the firearm," holding a defendant can be convicted as an aider and abettor even if his aid "relates to only one (or some) of a crime's phases or elements." *Id.* at 1246-48 (internal quotation marks omitted).  The Court thus held the affirmative act requirement for aiding and abetting a § 924(c) violation may be satisfied by showing the defendant facilitated either the predicate offense (in *Rosemond*, a drug trafficking crime) or the firearm use (or both). *Id.* at 1247.  As to the intent requirement, however, the Court held the defendant's "intent must go to the specific and entire crime charged"; in other words, the defendant must have intended the commission of an *armed* predicate offense.  *Id.* at 1248-49.  A defendant has the requisite intent when he actively participates in the predicate offense knowing one of his confederates will carry a gun.  *Id.* at 1249.  The defendant's knowledge of a firearm must be "advance knowledge," i.e., "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 1249-50.

In *Rosemond*, the trial court had instructed the jury the defendant was guilty of aiding and abetting if "(1) [he] knew his cohort used a firearm in the drug trafficking crime, and (2) [he] knowingly and actively participated in the drug trafficking crime." *Id.* at 1251.  The Supreme Court held this instruction was erroneous because it failed to explain the defendant "needed

advance knowledge of a firearm's presence" and thus permitted the jury to convict even if the defendant "first learned of the gun when it was fired and . . . took no further action to advance the crime." *Id.* at 1251-52.

Smith argues the jury instruction on aiding and abetting liability in this case was insufficient as a matter of law under *Rosemond* because it "fail[ed] to distinguish between whether Mr. Smith chose to participate in the robbery knowing that a firearm would be utilized; or, whether the knowledge of the firearm came too late for him to reasonably remove himself from the criminal act." Def.'s Mem., ECF No. 206 at 7.[2]  He asks the Court to grant him a judgment of acquittal or, in the alternative, to order a new trial because of this error.

The Government argues, as an initial matter, that Smith's motion is untimely because it was not filed within fourteen days after the jury returned a guilty verdict on May 24, 2013.  *See* Fed. R. Crim. P. 29(c)(1) (permitting a defendant to "move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later"); Fed. R. Crim. P. 33(b)(2) ("Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty.").  Although Smith's motion is untimely, the Court may nevertheless consider it if the failure to file the motion within the time permitted is the result of excusable neglect.  *See* Fed. R. Crim. P. 45(b)(1)(B); Fed. R. Crim. P. 33 advisory committee's note, 2005 Amendments ("[U]nder Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion for new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result of

---

[2] Because Smith's motion and accompanying memorandum do not have page numbers, citations to these documents refer to the page numbers added by the Court's Electronic Case Filing (ECF) System.

excusable neglect."). Because Smith filed the instant motion eleven days after the Supreme Court issued the *Rosemond* decision on which the motion is based, the Court will consider the motion on its merits.

Although Smith was charged with using and carrying, and aiding and abetting the use and carrying of, a firearm during and in relation to the Fox & Hound robbery, it is clear the jury convicted Smith on the aiding and abetting theory. The testimony at trial established there were two robbers who entered the restaurant, one significantly taller and bigger than the other. All three of the victims who testified at trial stated it was the bigger robber (later identified as Omar Kareem Hopkins) who brandished a gun during the robbery, while the smaller robber (Smith) restrained the victims with duct tape. No witness testified the smaller robber (Smith) had a gun at any point during the robbery.[3]

After instructing the jury on the elements of each of the three offenses charged, the Court advised the jury it could find Smith guilty of Counts Two and Three (robbery which interferes with interstate commerce, also known as Hobbs Act robbery, and using and carrying a firearm during and in relation to a crime of violence) on a theory of accomplice liability or aiding and abetting. Trial Tr. 68-69, May 24, 2014. The Court then gave the Third Circuit's model instruction on aiding and abetting liability without any objection from either party:[4]

---

[3] Kareem Watson, Smith and Hopkins's third coconspirator, testified it was part of the plan for the robbery that Hopkins would have a gun. *See* Trial Tr. 63-64, 68-69, 73, May 23, 2013. Moreover, when Hopkins was arrested a week after the robbery, law enforcement agents recovered a handgun matching the description of the gun the bigger robber brandished from Hopkins's bedroom.

[4] The Government specifically requested the model instruction on accomplice liability at the charging conference on May 23, 2014. Trial Tr. 216-17, May 23, 2014. Defense counsel indicated he had no problem with including the instruction. *Id.* at 217.

In this case, the Government alleges that the defendant aided and abetted the alleged principal in committing the Hobbs Act robbery and carrying and using a firearm during a crime of violence as charged in the superceding indictment.

In order to find the [defendant] guilty of the Hobbs Act robbery and carrying and using a firearm in furtherance of a crime of violence, because he aided and abetted the alleged principal in committing these offenses, you must find that the Government proved beyond a reasonable doubt each of the following four elements:

One, that the alleged principal committed the offenses charged by committing each of the elements of the offenses charged as I have explained those elements to you in my instructions.  The alleged principal need not have been charged with or found guilty of the offenses, however, as long as you find that the Government proved beyond a reasonable doubt, that he committed the offenses.

Two, that the defendant knew that the offenses charged were going to be committed or were being committed by the alleged principal.

Three, that the defendant knowingly did some act for the purpose of aiding the alleged principal in committing the specific offense charged and with the intent that the alleged principal commit those specific offenses.

And lastly, the fourth element, that the defendant's act did, in some way, aid the alleged principal to commit the offenses.  The defendant's acts need not, themselves, be against the law.

In deciding whether a defendant had the required knowledge and intent, members of the jury, you may consider both direct and circumstantial evidence, including the defendant's words and actions and the other facts and circumstances in evidence.  However, evidence that the defendant may be associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offenses is not enough for you to find the defendant guilty as an aider and abettor.

If the evidence shows that the defendant knew that the offenses were being committed or w[ere] about to be committed, but does not also prove beyond a reasonable doubt, that it was the defendant's intent and purpose to aid or otherwise associate himself with the offense[s], you may not find the defendant guilty of the offense as an aider and abettor

The Government must prove beyond a reasonable doubt, that the defendant in some way participated in the offense committed by the alleged principal as something the defendant wishe[d] to bring about and to make succeed.

The Government needs to show some affirmative participation by the defendant which at least, encouraged the alleged principal to commit the offense.

*Id.* at 69-71.

Because Smith did not object to this instruction at trial, any error is subject to plain error

review under Federal Rule of Criminal Procedure 52(b).  *See* Fed. R. Crim. P. 30(d) (requiring a

party who objects to any portion of the jury instructions or to a failure to give a requested instruction to "inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate" and providing that "[f]ailure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b)"); Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."); *United States v. Tiller*, 302 F.3d 98, 105 (3d Cir. 2002) (noting "[f]ailure to object at trial, absent plain error, constitutes a waiver of the issue for post-trial purposes"); 3B Charles Alan Wright, et al., *Federal Practice and Procedure* § 851 (4th ed. 2013) (stating the standards for harmless and plain error set forth in Rule 52 "are controlling when a trial court is passing on a post-trial motion").  To grant Smith relief under this standard, "[t]here must be an error that is plain[,] . . . affects substantial rights[,] [and] . . . seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *United States v. Gambone*, 314 F.3d 163, 182 (3d Cir. 2003) (citations and internal quotation marks omitted).

Smith argues the Court's aiding and abetting instruction was insufficient under *Rosemond* because the Court told the jury it was required to find that Smith knew the offenses charged (i.e., Hobbs Act robbery and carrying and using a firearm during a crime of violence) "were going to be committed or were being committed by the alleged principal," but did not require the jury to determine "when Mr. Smith knew about the gun and whether his knowledge was received in sufficient time to give him an opportunity to withdraw from the crime."  Def.'s Mem., ECF No. 206 at 9-10.  The Court agrees this aspect of the instruction is problematic, particularly insofar as it would permit the jury to convict upon finding the defendant knew the offenses charged "were being committed by the alleged principal," as a defendant who becomes aware a § 924(c) offense is being committed during the offense may not realistically still be able to opt out of the crime.

*See Rosemond*, 134 S. Ct. at 1251 (rejecting the argument that a defendant should be convicted of aiding and abetting a § 924(c) violation "even if he became aware of the gun only after he realistically could have opted out of the crime").

The aiding and abetting instruction in this case goes well beyond this single element, however, also requiring the jury (1) to find the defendant "knowingly did some act for the purpose of aiding and abetting the alleged principal in committing the specific offense charged *and with the intent that the alleged principal commit those specific offenses*," and (2) specifying that "[i]f the evidence shows that the defendant knew that the offenses were being committed or w[ere] about to be committed, but does not also prove beyond a reasonable doubt, that it was the defendant's intent and purpose to aid or otherwise associate himself with the offense[s], you may not find the defendant guilty of the offenses as an aider and abettor."  Trial Tr. 69-70, May 24, 2014 (emphasis added).   These additional requirements distinguish the aiding and abetting instruction in this case from the instruction the Supreme Court found insufficient in *Rosemond*. The latter requirement makes clear that a defendant's knowledge that a § 924(c) offense (which, by definition, requires the use or carriage of a firearm) "w[as] being committed" is not a sufficient basis for aiding and abetting liability; rather, the Government must also prove the defendant intended to aid or otherwise associate himself with the § 924(c) (i.e., armed) offense. Moreover, the requirement that the jury must find the defendant did some act to aid the principal in committing a § 924(c) offense with the intent that the principal commit the § 924(c) offense logically requires the defendant's participation to have occurred at a time when he knew a gun would be involved.  While additional refinements to the model aiding and abetting instruction may be desirable in the § 924(c) context in light of *Rosemond*, because the model instruction permits a conviction for aiding and abetting a § 924(c) offense only if the defendant did some act

for the purpose of aiding the alleged principal in committing an armed predicate offense and with the intent that the principal commit an armed predicate offense, the Court is not persuaded the instruction amounts to plain error under *Rosemond*.  *See Gambone*, 314 F.3d at 183 ("When reviewing a jury instruction for plain error, the analysis must focus initially on the specific language challenged, but must consider that language as part of a whole." (citation and internal quotation marks omitted)); *United States v. Jefferson*, No. 13-137, 2014 WL 1745027, at *11 (D.N.J. Apr. 29, 2014) (holding the Third Circuit model instruction on aiding and abetting "would not, like [the instructions] in *Rosemond*, tend to misguide the jury or lead it into error"); *cf. United States v. Davis*, 750 F.3d 1186, 1194 (10th Cir. 2014) (holding a general aiding and abetting instruction that required the jury to determine whether the defendant shared the principal's knowledge about the § 924(c) violation, "which necessarily encompasse[d] the planned use of a firearm," implicitly required the jury to find the defendant had advance knowledge of the firearm).

Moreover, even assuming the aiding and abetting instruction was defective under *Rosemond* because it did not explicitly state that Smith needed advance knowledge that a gun would be used during the robbery, neither a new trial nor a judgment of acquittal is warranted, as it is apparent the error caused no prejudice in this case.  At trial, Kareem Watson, who proposed the Fox & Hound as a robbery target,[5] testified that having a firearm was part of the plan for the robbery.  Watson explained that when he and Smith initially discussed the robbery, it "went without saying" that they would need a firearm to ensure the victims would listen to their

---

[5] Watson had worked at the Fox & Hound previously and knew where the money was kept and when the weekend's receipts would on hand, prior to being deposited in a bank.  *See* Trial Tr. 53-56, May 23, 2014.  He also knew the restaurant did not have a surveillance system.  *See id.* at 55.

demands.  *See* Trial Tr. 63-64, May 23, 2013.  When Watson and Smith met with Hopkins to discuss the robbery further, Hopkins told them he had a gun and showed the gun to them.  *Id.* at 63-65.  Watson confirmed it was part of the plan that Hopkins would bring the gun to the robbery.  *Id.* at 68-69, 73.  Watson was the main witness against Smith at trial, and although defense counsel urged the jury not to believe Watson's account, highlighting his motive to lie to obtain a reduction of his own sentence, it is evident from the guilty verdict that the jury credited Watson's testimony.  Watson's testimony provides an ample basis to conclude Smith knew in advance of the robbery that Hopkins would carry a gun.

Watson's testimony that a gun was part of the robbery plan is reinforced by Smith's continued active participation in the robbery after Hopkins displayed the gun early on during the offense.  According to the victims, whose accounts of the robbery were largely uncontested at trial, the two robbers entered the Fox & Hound on the morning on October 27, 2008, and asked to speak to a manager about a job application.  Leonard Lowe, the manager on duty at the time of the robbery, gave the men the requested applications, and when he attempted to hand the bigger robber (Hopkins) a pen, the robber pulled a gun on him and steered him into the restaurant's back office.  The smaller robber (Smith) followed close behind, grabbing the two other employees who were in the restaurant at the time (hostess Valynn Barfield and cook Tyrone Jenkins) and pushing them into the back office as well.  Once inside the office, Lowe opened the safe and handed the money to the bigger robber, and the smaller robber restrained the three employees (as well as a beer delivery person, who arrived during the robbery) with duct tape.  The bigger robber continued to hold the gun, which was visible to the victims inside the office.  The fact that Smith continued to participate in the robbery by following Hopkins into the back office and restraining the victims with duct tape, rather than turning and leaving the restaurant

upon seeing Hopkins with a gun, supports Watson's testimony that the gun was part of the plan. *See Rosemond*, 134 S. Ct. at 1250 n.9 (noting "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had [advance] knowledge [of the gun])."

For all of the foregoing reasons, Smith's Second Motion for Judgment of Acquittal or New Trial Pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure will be denied. An appropriate order follows.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez, J.